

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

David Zwick,                        )
              Plaintiff,       )
                      )
v.                                  )
                      )    No.  14 C 5044
Inteliquent, Inc.,                  )
Richard Monto, and                  )    Judge Thomas M. Durkin
John Harrington,                    )
              Defendants.      )

## DISCOVERY PLAN FOR ELECTRONICALLY STORED INFORMATION

### I.     PARTIES' AGREED-TO TERMS

Pursuant to Federal Rule of Civil Procedure 26 and Principle 2.01 of the Seventh Circuit Electronic Discovery Pilot Program ("7th Cir. Pilot Program"), Plaintiff David Zwick and Defendants Inteliquent, Inc., Richard Monto, and John Harrington (collectively, "the Parties" and each a "Party"), by their respective counsel in the above-captioned action, stipulate and agree that the following discovery plan shall govern the search and production of ESI in this matter (the "Discovery Plan").

### A.     SCOPE

1.     This Discovery Plan shall govern the production of documents and electronically stored information ("ESI"), as described in Federal Rules of Civil Procedure 26, 33, and 34.

2.     The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Principles Relating to the Discovery of Electronically Stored Information (the "Principles") of the 7th Cir. Pilot Program.

3.      Nothing in this Discovery Plan shall supersede the provisions of any subsequent Stipulated Protective Order.

4.      The Parties identify the following categories of ESI most relevant to the Parties' claims or defenses in this matter. While this categorical identification is not intended as an exhaustive list of potential materials and shall not be construed to waive a party's right to request additional ESI, or any party's right to object to production, the following represent the categories of ESI most likely to result in the production of information most relevant to the issues in the case to the best of the Parties' knowledge at this time: email and email attachments pertaining to Plaintiff's claims and the Defendants' defense of those claims.

5.      E-discovery will be limited to ESI in the Parties' custody, possession, or control and that of certain limited third-parties who are on the board of directors of one of the Parties. In an effort to expedite the discovery process, the Parties agree to initially limit e-discovery to the period of time most likely to contain the most relevant information to this dispute:  October 19, 2012 to January 31, 2014 (the "Relevant Time Period"), with the exception of April 2014 to August 2014 for Lauren Wright only. The Parties reserve the right to request such ESI in the future and reserve the right to object to such production.

6.      The Parties identify the following Parties and Third Parties likely to have ESI relevant to this matter:  David Zwick, Darren Burgener, Ed Evans, Richard Monto, John Harrington, Rian Wren, Joe Beatty, Lawrence Ingineri, James Hynes, Timothy Samples, and Ed Greenberg, and Lauren Wright.

7.      Subject to the right of parties set forth above to request additional ESI if circumstances warrant it, the collection of ESI by the Parties shall be a single collection.

**B.** **SEARCHING**

1. CASES INVOLVING SUBSTANTIAL ESI

   a. E-mail and unstructured data (e.g., word processing documents, spreadsheets, presentation slides)[1]

   (1) Types of email and unstructured data:

   (a) Email systems involved: Exchange/Outlook.

   (b) Is there email stored at Internet Service Providers (ISPs) or cloud email providers? Not for the Defendants or Inteliquent's employees. However, Plaintiff has a gmail account and the Parties believe that Rian Wren, Joe Beatty, Lawrence Ingineri, James Hynes, Timothy Samples, and Ed Greenberg used personal or other email accounts to conduct Inteliquent business.

   (c) What file types are involved? Email and any attachments to those email.

   (d) Are any of the non-email documents located in cloud-based storage? No.

---

[1] For a definition of "Unstructured Data", *see* The Sedona Conference Glossary, available at www.thesedonaconference.org/publications.

(2)     Search Protocol

    (a)     Zwick, Burgener, Evans, Monto, Harrington, and Wren used inteliquent.com email accounts during the Relevant Time Period. Beatty, Ingineri, Hynes, Samples, and Greenberg did not.

    (b)     Through a third party e-discovery vendor, Epiq Systems ("Epiq"), Inteliquent will collect all of Zwick's, Burgener's, Evans', Monto's, Harrington's, and Wren's email on its server from the Relevant Time Period. Inteliquent will also request that Wren, Beatty, Ingineri, Hynes, Samples, and Greenberg voluntarily turn over to Epiq all email from any personal or other email account from which they conducted Inteliquent business during the Relevant Time Period.

    (c)     Epiq will then search all of those email accounts for the following terms:

        (i)     CFO /s David or Zwick;

        (ii)     change /2 control;

        (iii)     (David or Zwick or Darren or Burgener) /s (Terminat! Or Fir! Or Replac!);

        (iv)     Resign! /s David or Zwick

        (v)     Investigat! / s David or Zwick

        (vi)     DLA

        (vii)     Jon! /2 King

      (viii)    Patrick /2 Smith;

      (ix)    Rian /s David or Zwick or shares or AT&T

      (x)    Inside! /s share /s sales;

      (xi)    Inside! /s trading; and

      (xii)    Inside!  /s AT&T /2 settlement or agreement

(d)    Epiq will then de-duplicate the documents responsive to its search.

(e)    Inteliquent will then review the de-duplicated search results for documents that are subject to the attorney-client privilege, work product doctrine, or other applicable privilege or protection, or that are unresponsive to the intent of the term search (for example only if there is a hit on "DLA" that does not refer to the law firm DLA Piper, or a hit on "resign /s David" that refers to a David who is not Plaintiff David Zwick; and any documents falling into these categories will not be produced).  Documents subject to those privileges or protections will be identified on a privilege log.

(f)    Zwick's counsel has also requested: "All July and August 2013 emails that relate in any way to David Zwick, Darren Burgener, or the DLA Investigation that were written by any of the following three people to any of the following three people: Defendant Richard Monto, Defendant John Harrington, and Board Member Rian Wren.  (Emails written to one of these three

individuals and which include other recipients also constitute responsive documents for purposes of this request.)"

(g)     In response to Zwick's counsel's request set out in subparagraph (B)(2)(f), Inteliquent will conduct the following search:

(i)     Through Epiq, Inteliquent will collect all of emails sent by Wren, Harrington, or Monto to Wren, Harrington, and/or Monto during July and August 2013 (including those which copy additional recipients).

(ii)     Epiq will then de-duplicate the documents responsive to this search.

(iii)     Epiq will then compare the de-duplicated documents generated as a result of paragraph (B)(2)(g)(ii) to those generated as a result of paragraph (B)(2)(d) and provide Inteliquent with the documents that were identified as a result of paragraph (B)(2)(g)(ii) which were not included in the documents identified as a result of paragraph (B)(2)(d).

(iv)     Inteliquent will then review the documents identified as a result of paragraph (B)(2)(g)(iii) to determine which documents relate to Zwick, Burgener, or

the DLA Investigation and are thus responsive to Zwick's counsel's request set out in paragraph (B)(2)(f).

(v)     Inteliquent will then review the responsive documents identified as a result of paragraph (B)(2)(g)(iv) for documents that are subject to the attorney-client privilege, work product doctrine, or other applicable privilege or protection.  Documents subject to those privileges or protections will be identified on a privilege log.

## C.     PRODUCTION FORMAT

### 1.     CASES INVOLVING LIMITED ESI

a.     Document Format.

(1)     Electronically stored information derived from e-mail and other electronically created files (e.g. Microsoft Office files, WordPerfect) will be produced as Bates-labeled single page TIFF or searchable pdf images.  The documents will be produced in a form that is as searchable for the Plaintiff as it is for Inteliqent, its counsel, or other two defendants..

(2)     Documents Without Standard Pagination. Documents without standard pagination, such as spreadsheets or desktop databases (such as MicrosoftAccess) maintained electronically, will be produced in native format. Any additional structured data production will be limited to existing report formats absent cost shifting.

(3)     <u>Web Pages and Social Media Information</u>. Web pages, social media data and other information not otherwise covered in subparts 1.a.(1) or (2) above shall be produced as "screen shots" or "screen captures" unless the Parties agree to perform bulk exports of entire websites and social media accounts into native format.

(4)     In addition to the production as specified above, the Parties may also agree to the production of metadata from fields to be specified by the Parties and the provision of load files pursuant to the Parties' specification.

    (a)     Each Party reserves the right to object to production of documents in the format specified herein to the extent that production in such format is impracticable or unreasonably burdensome or expensive.

    (b)     Each Party reserves the right to request native files for documents that are difficult to understand after they have been produced in the format specified herein or that contain potentially relevant embedded information, and such requests will not be unreasonably denied.

        (i)     The requesting Party shall make any such request as soon as reasonably practical after receiving a document production.

(ii)     The requesting Party shall provide a list of Bates numbers of the documents that it is requesting to be produced in native file format.

(iii)    Within fourteen (14) days of receiving this request, the producing Party will either (i) produce the requested native files to the extent reasonably practicable or (ii) respond in writing, setting forth its position on the production of the requested documents.

(iv)    If the Parties are unable to agree as to the production of the requested documents in native format, the Parties may submit the matter to the Court.

(5)     Load file[2] format. The Parties agree on the load file specifications provided for in Section 3 of Exhibit 1.

(6)     Audio/Video files maintained electronically, will be produced as native files.

b.     De-Duplication. A Party is only required to produce a single copy of a responsive document.

---

[2]     A load file relates to a set of scanned images or other files, and indicates where individual pages or files belong together, where each document begins, and what documents are attached to the document. A load file may also contain metadata or extracted text associated with the documents. *See* The Sedona Conference Glossary, cited at note 2 *supra*.

(1)     Parties may de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash[3] value matching. ESI that is not an exact duplicate may not be removed.

(2)     Common system files as defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced.

(3)     Attachments to e-mails shall not be eliminated from the parent e-mail.

(4)     Paper documents shall not be eliminated as duplicates of responsive ESI. To the extent the Parties de-duplicate stand-alone electronic documents against an e-mail attachment, the attachment to the e-mail must be the document that is produced.

c.     <u>Native files</u>. The Parties will make reasonable efforts to ensure that documents produced in native form are decrypted (or that passwords are supplied), but the Parties have no duty to identify encrypted documents prior to production.

## D.     THIRD-PARTY ESI

1.     A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this Discovery Plan with the subpoena and state that the Parties to the litigation have requested that third-parties produce documents in accordance with the specifications set forth herein.

---

[3] A Hash value is a mathematical algorithm that represents a unique value for a given set of data or document, similar to a digital fingerprint. *See* The Sedona Conference Glossary, cited at note 2 *supra*.

2.      The Issuing Party is responsible for producing any documents obtained under a subpoena to all other Parties.

3.      If the Issuing Party receives any hard-copy documents or native files, the Issuing Party will process the documents in accordance with the provisions of this Discovery Plan, and then produce the processed documents to all other Parties.

4.      However, any documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such documents are received by the Issuing Party. If the Issuing Party subsequently processes any such documents, the Issuing Party will produce those processed documents to all other Parties.

**5.**      If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

## F.      OTHER

1.      In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized[4]). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and

---

[4] Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, report titles, similar headers and footers and other logical indicators. *See* The Sedona Conference Glossary, cited at note 2 *supra*.

ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly.

2.      This Discovery Plan shall have no effect on any producing Party's right to seek reimbursement for costs associated with collection, review, or production of documents or ESI.

3.      Nothing in this Discovery Plan should require ESI and other tangible or hard copy documents that are not text-searchable to be made text-searchable. Nevertheless, counsel or the Parties are encouraged to discuss cost sharing for optical character recognition (OCR) or other upgrades of paper documents or non-text-searchable electronic images that may be contemplated by each Party. If a producing Party creates OCR of paper documents or non-text-searchable electronic images it produces for its own use, that producing Party should consider providing OCR to other Parties willing to pay a reasonable share of the cost of OCR.

4.      Nothing in this Discovery Plan shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

5.      Nothing in this Discovery Plan is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

6.      Counsel executing this Discovery Plan warrant and represent that they are authorized to do so on behalf of themselves and their respective clients.

Submitted on February 27, 2015

**PLAINTIFF DAVID ZWICK**

By: s/Stuart J. Chanen

Stuart J. Chanen
Nicole Nehama Auerbach
Margot Klein
VALOREM LAW GROUP LLC
35 E. Wacker Drive, Suite 3000
Chicago, Illinois 60601
312.676.5460
Stuart.chanen@valoremlaw.com
Nicole.auerbach@valoremlaw.com
Margot.klein@valoremlaw.com

**DEFENDANTS INTELIQUENT, INC.,
RICHARD MONTO, AND
JOHN HARRINGTON**

By: s/Zachary C. Jackson

Zachary C. Jackson
EPSTEIN BECKER & GREEN, P.C.
150 N. Michigan Avenue, 35th Floor
Chicago, Illinois 60601
Phone: (312) 499-1462
zjackson@ebglaw.com

John F. Fullerton III (admitted *pro hac vice*)
Nancy L. Gunzenhauser (admitted *pro hac vice*)
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177
Phone: (212) 351-4580
jfullerton@ebglaw.com
ngunzenhauser@ebglaw.com

David W. Garland (admitted *pro hac vice*)
Jiri Janko (admitted *pro hac vice*)
EPSTEIN BECKER & GREEN, P.C.
One Gateway Center
Newark, New Jersey 07102
Phone: (973) 642.1900
dgarland@ebglaw.com
jjanko@ebglaw.com

Approved: _____        Date: ___3/2/15___
          The Honorable Thomas M. Durkin

**EXHIBIT 1**

1. **IMAGES:**
   - Produce documents in Single Page Group IV TIFF files
   - Image Resolution at least 300 DPI
   - Black and White unless color is necessary to understand the meaning
   - File Naming Convention: Match Bates Number
   - Insert Placeholder image for files produced in Native form (see Section 2)
   - Original document orientation shall be retained

2. **FULL TEXT EXTRACTION / OCR:**
   - Produce full extracted text for all file types of ESI (Redacted text will not be produced)
   - Production format:  Single text file for each document, not one text file per page
   - File Naming Convention: Match Beg Bates Number

3. **LOAD FILE SPECIFICATIONS** [*Insert modifications, if any, to fit the needs of the particular case*]**:**
   - **Images Load File**: Opticon OPT file
   - **Metadata Load File**:  Concordance DAT file with field header information added as the first line of the file. Export using Concordance default delimiters.
   - **Extracted TEXT:**  Reference File Path to TEXT file in DAT file
   - **Native Files Produced:**  Reference File Path to Native file in DAT file

4. **ESI PRODUCTION METADATA FIELDS** [*Insert modifications, if any, to fit the needs of the particular case* ]**:**
   - **BegBates**: Beginning Bates Number
   - **EndBates**: Ending Bates Number
   - **BegAttach**:  Beginning Bates number of the first document in an attachment range
   - **EndAttach**:  Ending Bates number of the last document in attachment range
   - **Custodian**: Name of the Custodian of the File(s) Produced – Last Name, First Name format
   - **FileName**:  Filename of the original digital file name
   - **NativeLink**:  Path and filename to produced Native file
   - **EmailSubject**:  Subject line extracted from an email message
   - **Title**: Title field extracted from the metadata of a non-email document
   - **Author**:  Author field extracted from the metadata of a non-email document
   - **From**:  From field extracted from an email message
   - **To**: To or Recipient field extracted from an email message
   - **Cc**: CC or Carbon Copy field extracted from an email message
   - **BCC**:  BCC or Blind Carbon Copy field extracted from an email message
   - **DateRcvd**:  Received date of an email message (mm/dd/yyyy format)
   - **DateSent**:  Sent date of an email message  (mm/dd/yyyy format)
   - **DateCreated**:  Date that a file was created  (mm/dd/yyyy format)
   - **DateModified**:  Modification date(s) of a non-email document

- **Fingerprint**: MD5 or SHA-1 has value generated by creating a binary stream of the file
- **ProdVolume**:  Identifies production media deliverable
- **ExtractedText**: File path to Extracted Text/OCR File
- **Redacted**:  "Yes," for redacted documents; otherwise, blank

6.      **PAPER DOCUMENTS METADATA FIELDS:**
- **BegBates**: Beginning Bates Number
- **EndBates**: Ending Bates Number
- **BegAttach**:  Beginning Bates number of the first document in an attachment range
- **EndAttach**:  Ending Bates number of the last document in attachment range
- **Custodian**: Name of the Custodian of the File(s) Produced – Last Name, First Name format
- **ProdVolume**:  Identifies production media deliverable